**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
─────────────────────────────────

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

                    v.          **09-CR-312S(Sr)**

**REGINALD HILTON,**

        **Defendant.**
─────────────────────────────────

## DECISION AND ORDER

### AND

### REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. William M. Skretny, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #19.

### PRELIMINARY STATEMENT

The defendant, Reginald Hilton (hereinafter, "defendant" or "Hilton"), is charged in a three count Indictment with having violated Title 18, United States Code, Section 1344(a)(2) (Counts 1 and 2) and Title 18, United States Code, Section 1349 (Count 3). Dkt. #11.

Presently pending before this Court is defendant's motion to suppress statements (filed as part of the defendant's omnibus motion for discovery[1]) (Dkt. #31) and defendant's motion to dismiss the Indictment[2] (Dkt. #37 and addendum, Dkt. #32). The government has filed its response to defendant's motion to suppress statements (Dkt. #34), as well as its response to the defendant's *pro se* motion to dismiss the Indictment (Dkt. ##39 and 40). Thereafter, the defendant filed a reply in further support of his *pro se* motion. Dkt. ##43 and 44. What follows is this Court's Decision and Order with respect to defendant's motion to suppress statements and this Court's Report, Recommendation and Order with respect to the defendant's *pro se* motion to dismiss the Indictment.

## PROCEDURAL BACKGROUND

The defendant was initially charged in a Criminal Complaint on or about April 23, 2009. Dkt. #1. The Criminal Complaint charged the defendant with one count of violating Title 18, United States Code, Section 1344, "in that the defendant presented

---

[1] As will be discussed in greater detail below, that portion of the defendant's omnibus motion seeking the disclosure of various discovery materials was denied as moot. Moreover, defendant's motion to suppress identification was addressed by this Court during oral argument and found to be an evidentiary issue for trial.

[2] The Court notes that in December 2009, the defendant sent directly to Chambers a *pro se* Motion to Dismiss the Indictment (now filed as Dkt. #37). At the time the *pro se* Motion to Dismiss the Indictment was received, the defendant was represented by Paul G. Dell, Esq. Following oral argument on the pending motions held on May 7, 2010, and upon the defendant's request, the Court agreed to consider the defendant's *pro se* motion. Following oral argument, this Court directed the Clerk of Court to electronically file the defendant's *pro se* motion and it was assigned Dkt. #37.

and successfully cashed ten checks that purported to be drawn on the First Niagara payroll checking account of PLS III LLC, but which in fact were counterfeit checks not issued with the knowledge or permission of PLS III LLC." Dkt. #1.  At the defendant's request, an attorney, Noemi Fernandez-Hiltz, Esq., was appointed to represent him in connection with the Criminal Complaint.

Also on April 23, 2009, a related case against Thomas Brown was commenced by reason of the filing of a separate Criminal Complaint.  On July 1, 2009, defendant Brown pled guilty before United States District Judge William M. Skretny to a felony Information charging him with bank fraud in violation of Title 18, United States Code, Section 1344(a)(1).  As part of his plea agreement, Thomas Brown agreed to cooperate with the government by providing complete and truthful information regarding his knowledge of criminal activity.  See Dkt. #39-5, pp.1-18.

Thereafter, on or about September 9, 2009, a Federal Grand Jury sitting in the Western District of New York returned a three count Indictment charging the defendant with violating Title 18, United States Code, Section 1344(a)(2) (Counts 1 and 2) and Title 18, United States Code, Section 1349 (Count 3).  Dkt. #11.  After the return of the Indictment, Noemi Fernandez-Hiltz, Esq. continued her representation of the defendant.

Beginning as early as July 9, 2009 and continuing until the assignment of new counsel in October 2009, the defendant expressed his concerns about Ms.

Fernandez-Hiltz's representation of him and further, asserted that Ms. Fernandez-Hiltz had improperly disclosed to counsel for the government privileged attorney-client communications. On October 21, 2009, this Court granted Ms. Fernandez-Hiltz's motion to withdraw as counsel and granted defendant's motion for new counsel. On October 28, 2009, this Court confirmed that Paul G. Dell, Esq. had been assigned to represented the defendant. Later that same day the Court issued a Scheduling Order setting forth the following deadlines: discovery to be completed by November 13, 2009; pre-trial motions due by December 31, 2009; responses due by January 15, 2010; and oral argument was scheduled for February 5, 2010. Dkt. #16.

Sometime on or after December 26, 2009, my Chambers received what purported to be a *pro se* Motion to Dismiss Indictment directly from the defendant. At that time, my Chambers spoke to the defendant's attorney, Paul G. Dell, Esq., concerning the *pro se* motion and inquired as to whether the defendant and Mr. Dell had reached an impasse whereby the defendant was wishing to proceed *pro se*. Mr. Dell advised my Chambers that he did not believe that he and the defendant had reached an impasse and that he believed that the reason the defendant submitted the *pro se* motion to dismiss the Indictment was that the defendant was unaware that Mr. Dell intended to seek an extension of the December 31, 2009 deadline to file pre-trial motions. Accordingly, the defendant's *pro se* motion to dismiss the Indictment was not

electronically filed with the Court, however the original was retained in my Chambers' file.[3]

On December 28, 2010, Mr. Dell, on behalf of the defendant, did indeed file a motion for an extension of time to file pre-trial motions. Dkt. #18. Defendant's motion for an extension of time was granted and an Amended Scheduling Order was issued on January 6, 2010 setting a motion deadline of February 1, 2010. Dkt. #21. Thereafter, Mr. Dell, on behalf of the defendant, filed two additional motions for an extension of the time to file *pro se* motions (Dkt. ##23 and 27). Both motions were granted and a Third Amended Scheduling Order and a Fourth Amended Scheduling Order were issued (Dkt. ## 24 and 28). On March 30, 2010, Mr. Dell, on behalf of the defendant, filed an Omnibus Motion for Discovery and Motions to Suppress Statements and Identification Evidence. Dkt. #31. The government filed its opposition to the defendant's omnibus motion for discovery and motions to suppress, as well as the *pro se* Addendum to defendant's *pro se* motion to dismiss (as set forth above, at the time the government filed its initial response to the motions filed by and on behalf of the defendant, defendant's original *pro se* motion had not yet been electronically filed). Dkt. #34.

---

[3] As noted above in footnote 2, the Court agreed to consider defendant's *pro se* motion, including the motion submitted to my Chambers in late December 2009 and an addendum to that motion to dismiss electronically filed on April 5, 2010 (Dkt. #32). Accordingly, the defendant's motion to dismiss the Indictment was electronically filed at the Court's direction on May 7, 2010 (Dkt. #37).

On May 7, 2010, this Court heard oral argument as to the motions filed by and on behalf of the defendant. During oral argument, defendant acknowledged that the government provided the discovery sought in the omnibus discovery motion. Therefore, the Court denied as moot, the defendant's omnibus motion for discovery. Also during oral argument, the Court addressed that portion of the defendant's motion seeking the suppression of identification evidence, finding that the issue of admissibility of an identification of the defendant by a cooperating witness is one to be addressed by the trial judge at the time of trial. Accordingly, the Court denied as moot, that portion of the defendant's motion seeking to suppress the identification evidence. The defendant's motion to suppress statements is presently pending and will be addressed below.

In addition to the foregoing, the defendant requested that the papers he submitted to the Court *ex parte* in December 2009 be filed with the Clerk of Court with copies to be provided to his attorney and to counsel for the government. The Court directed that the government respond to the *pro se* motion by May 28, 2010 and that any reply be filed by June 11, 2010. The Court indicated that oral argument would be scheduled, if necessary. The government did file its opposition to the defendant's *pro se* motion on May 28, 2010 (Dkt. #39) and it subsequently filed a corrected affidavit on June 1, 2010 (Dkt. #40). Notwithstanding the direction of this Court, the defendant did not file his reply until June 16, 2010, at which time the Court took the motion under advisement.

# FACTUAL BACKGROUND[4]

As discussed above, on September 9, 2009, a Federal Grand Jury sitting in the Western District of New York returned a three count Indictment charging the defendant, Reginald Hilton, with defrauding two federally insured financial institutions, Key Bank (Count 1) and First Niagara Bank (Count 2) in violation of Title 18, United States Code, Section 1344(a)(2) and with conspiracy to defraud those two banks (Count 3) in violation of Title 18, United States Code, Section 1349. Specifically, each count alleges that the defendant "caused inauthentic (i.e. false) checks purporting to be drawn on the banks to be presented at those banks, and thereby obtained the funds of those banks upon the false pretense that the checks were authentic." Dkt. #34, p.1. More specifically, the government summarizes the charges as follows,

> [i]n Count One, it is alleged that between approximately December 19, 2008 and January 31, 2009, the defendant caused checks that purported to be checks drawn on a Key Bank checking account of Creditors Financial Group, LLC (*but which the defendant knew were not authentic checks*) to be presented at Key Bank, and thereby obtained more than $17,000 from Key Bank.
>
> In Count Two, it is alleged that between approximately March 20, 2009 and March 27, 2009, the defendant caused checks that purported to be checks drawn on a First Niagara checking account of PLS III LLC (*but which the defendant knew were not authentic checks*) to be presented at First Niagara, and thereby obtained more than $6,000 from First Niagara.

---

[4] The facts herein are taken from the Government's Memorandum in Opposition to the Defendant's Motion to Dismiss (Dkt. #34) and the Affidavit of Assistant United States Attorney Paul J. Campana dated and filed May 28, 2010 (with corrections reflected in Dkt. #40) submitted in opposition to the defendant's *pro se* motion (Dkt. #39).

> In Count Three, it is alleged that between approximately
> December 19, 2008, and March 27, 2009, the defendant
> conspired to violate section 1344 by causing checks that
> purported to be checks drawn on Key Bank and First
> Niagara checking accounts (*but which the defendant knew
> were not authentic checks*) to be presented at Key Bank and
> First Niagara, and thereby obtained money from those
> financial institutions.

Dkt. #34, p.2.

 

As described by the government, the defendant personally cashed numerous checks at Key Bank and enlisted the assistance of at least two other persons, Jacqueline Townsel and Thomas Brown to do the same. Dkt. #34, p.4. The government maintains that its proof at trial will be that the checks were fabricated counterfeit checks that appeared to be drawn on the Key Bank account of Creditors Financial Group, LLC. *Id*. These checks were neither signed by the account holder (Creditors Financial) nor were they otherwise authorized by Creditors Financial. *Id*. The defendant personally cashed seventeen of the counterfeit checks at Key Bank. *Id*. The checks were made payable to him and the defendant endorsed them. *Id*. Surveillance photographs are available with respect to most of the checks. *Id*. at pp.4-5. According to the government, "most of the checks bear a single inked fingerprint, which the tellers took as a precautionary measure. Two of the checks bear the inked fingerprint, plus the presenter's New York State drivers license number, license expiration date, and date of birth." *Id*. at p.5.

The government asserts that the defendant had a similar scheme with respect to First Niagara Bank, another federally insured financial institution. *Id*. Not unlike the scheme involving Key Bank, this scheme involved the use of fabricated/counterfeit checks that appeared to be drawn on the First Niagara account of PLS III LLC. *Id*. The checks were neither signed by the account holder, nor otherwise authorized by PLS III. *Id*. The defendant personally cashed at least ten of the counterfeit checks at First Niagara, the checks were made payable to Reginald Hilton and the defendant endorsed them. *Id*. As with the Key Bank checks, surveillance photographs are available for most of the checks. *Id*. Moreover, all but one of the false PLS III checks bear the presenter's New York drivers license number and expiration date. With respect to the Key Bank and First Niagara checks, the drivers license number and expiration date on the checks are the same as the biographical data on file concerning the defendant at the New York Department of Motor Vehicles.

At the time of the defendant's arrest on May 6, 2009, he was carrying a New York State drivers license which had the same serial number, birth date, and expiration date as the New York State drivers license described on the checks mentioned above. *Id*. at p.6.

## <u>DISCUSSION AND ANALYSIS</u>

**Motion to Suppress Statements**

As noted above, there is one remaining "motion" set forth as part of defendant's omnibus motion for discovery and motions to suppress, a motion to suppress statements. Dkt. #31. In his "motion," the defendant states,

> [i]n the event that the prosecutor intends to offer into evidence at trial statements made by Reginald Hilton to law enforcement officers, Mr. Hilton moves to suppress those statements on the grounds that they were elicited from him in violation of his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel.

Dkt. #31, p.11. In its opposition, the government states, "[t]he government knows of no post-arrest statements made by the defendant that the government seeks to offer in its case in chief or otherwise." Dkt. #34, p.12. Based on the representations made by counsel for the government, defendant's motion to suppress statements is denied as moot.

**Motion to Dismiss**

By his *pro se* motions to dismiss the Indictment, the defendant argues that the Indictment should be dismissed because it does not charge an offense. In addition the defendant argues that the charges in the Indictment are duplicitous. Finally, the defendant maintains that the Indictment must be dismissed because of what he maintains was improper conduct by and between counsel for the government (Assistant United States Attorney Paul J. Campana) and defendant's former appointed counsel, Noemi Fernandez-Hiltz.

**Sufficiency of the Indictment**

The defendant's *pro se* motion to dismiss the Indictment on the grounds that the Indictment does not properly allege an offense is premised on the defendant's theory that he did not intend his conduct to cause a monetary loss to the financial institutions, Key Bank and First Niagara Bank. Rather, the defendant intended to cause monetary losses to the two companies, Creditors Financial and PLS III LLC on whose accounts the counterfeit checks were drawn. More specifically, the defendant argues that the government's allegations,

> ignore the intent of congress [sic] in enacting the bank fraud statute. . . . The federal bank fraud statute does not bring into federal jurisdiction the act of defrauding any and all persons within the border of the United States and abroad. Section 1344 permits the prosecution of persons who knowingly (1) engage in a course of conduct designed to deceive a federally chartered or insured financial institution into releasing property AND, (2) possessed an <u>intent to victimize the institution</u> by exposing it to actual or potential loss.

Dkt. #32, pp.5-6 (internal citations omitted)(emphasis in original).

As described above, the defendant is charged in Counts 1 and 2 of the Indictment with violating Title 18, United States Code, Section 1344(a)(2), bank fraud. Title 18, United States Code, Section 1344 provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice -
>
> (1) to defraud a financial institution; or
>
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody

or control of, a financial institution, by means of false or
fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not
more than 30 years, or both.

As a general matter, "an indictment is sufficient if it, first, contains the elements of the

offense charged and fairly informs a defendant of the charge against which he must

defend and, second, enables him to plead an acquittal or conviction in bar of future

prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117 (1974);

*United States v. Stavroulakis,* 952 F.2d 686, 693 (2d Cir.), *cert. denied,* 504 U.S. 926

(1992). Moreover, the Court of Appeals for the Second Circuit has often stated, "an

indictment need do little more than to track the language of the statute charged and

state the time and place (in approximate terms of the alleged crime." *United States v.*

*Stavroulakis,* 952 F.2d 686, 693 (2d Cir.), *cert. denied,* 504 U.S. 926 (1992); *United*

*States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct.

54, 46 L.Ed.2d 50 (1975); *United States v. Bagaric*, 706 F.2d 42, 61 (2d Cir.), *cert.*

*denied*, 464 U.S. 840, 104 S.Ct. 134, 78 L.Ed.2d 128 (1983); *see also United States v.*

*Bailey*, 444 U.S. 394, 414, 100 S.Ct. 624, 636, 62 L.Ed.2d 575 (1980). The Second

Circuit has further noted the Supreme Court's caveat that when the definition of an

offense includes "'generic terms, it is not sufficient that the indictment shall charge the

offence in the same generic terms as in the definition; but it must state the species, it

must descend to particulars.'" *Russell v. United States*, 369 U.S. 749, 765, 82 S.Ct.

1038, 1047, 8 L.Ed.2d 240 (1962) (*quoting United States v. Cruikshank*, 92 U.S. 542,

558, 23 L.Ed. 588 (1876)); *see also United States v. Rosenblatt*, 554 F.2d 36, 41 (2d Cir.1977).

As required by Second Circuit precedent, the Indictment in the instant case tracks the statutory language for a violation of Title 18, United States Code, Section 1344(a)(2) and clearly informs the defendant of the charges against him. In addition, the government summarized the charges against the defendant in the Indictment as follows:

> [t]he crime charged in Counts One and Two of the Indictment is the execution of a scheme to obtain moneys and funds owned by and under the custody and control of Key Bank and First Niagara by means of false pretenses in violation of Title 18, United States Code, Section 1344(a)(2). The indictment further alleges that the defendant defrauded the banks by presenting checks that appeared to be drawn on customer bank accounts, but which actually were not authentic checks at all. Count Three charges a conspiracy to defraud the same banks, which is a violation of 18 U.S.C. Section 1349.

Dkt. #34, pp.7-8. Based on the foregoing, the government submits that the Indictment tracks the relevant statutes and properly alleges the offenses charged.

In support of his motion to dismiss, the defendant principally relies upon *United States v. Rodriguez*, 140 F.3d 163 (2d Cir. 1998) where the Court of Appeals for the Second Circuit reversed a bank fraud conviction because there was no proof that the defendant engaged in a pattern or course of conduct designed to deceive a federally insured bank. The defendant's reliance on *Rodriguez* is misplaced. Unlike the present case, *Rodriguez* involved "checks that [the defendant] presented for deposit

[that] were not forged, [altered], or stolen and were actually endorsed by [an] authorized signatory." 140 F.3d at 169; *accord United States v. Laljie*, 184 F.3d 180, 190 (2d Cir. 1999) (noting that *Rodriguez* involved "facially proper checks, which had no alterations and bore the authentic signature of a person who had authority to sign"). Thus, in *Rodriguez*, the court found that the defendant did not intend to victimize the bank. *Rodriguez*, 140 F.3d at 168-69; *see also United States v. Barrett*, 178 F.3d 643, 647-48 (2d Cir. 1999) (distinguishing *Rodriguez* and affirming conviction of bank fraud where defendant intended to defraud the bank by passing forged checks); *United States v. Mercado*, No. S1 02 CR 675 WHP, 2003 WL 21756084, at *2 (2d Cir. July 30, 2003)(distinguishing *Rodriguez,* stating "the superseding indictment clearly charges the defendants with depositing a stolen, altered check into a federally-insured bank. ... The Government has clearly alleged that the defendants intended to victimize the bank.").

In the case at bar, the Court agrees with counsel for the government that the arguments put forth by the defendant are more appropriately raised in a post-trial motion based on the sufficiency of the evidence. *See* Dkt. #34, p.9. At this stage of the proceedings, the Court need not look beyond the face of the Indictment to determine its sufficiency. Accordingly, for the foregoing reasons, it is recommended that defendant's *pro se* motion to dismiss the Indictment on the grounds that it fails to charge an offense be denied.

**Duplicity**

The defendant next argues that "[t]he indictment fails to articulate the nature of the scheme in such a way as to clearly inform [the defendant] what action he must be prepared to defend and is duplicitous." Dkt. #32, p.10. Moreover, the defendant asserts that "[s]everance resulting in a separate count for each alleged scheme is necessary in the interests of justice. In order to avoid duplicity, the indictment must allege that the multiple transactions were schemes in furtherance of a larger scheme. [sic] Indictment artificially combines multiple acts into one grand scheme creating great prejudice." *Id*. In its opposition to the defendant's motion to dismiss, the government submits that there were, as charged in the Indictment, two schemes, one scheme to defraud Key Bank using what appeared to be checks drawn on Creditors Financial Group's account, and a second scheme involving a different account holder, PLS III LLC, at a different bank, First Niagara. Dkt. #34, p.10.

An indictment is duplicitous when it charges multiple offenses in the same count. Whereas, an indictment is multiplicitous if it charges the same offense multiple times in different counts.

> An indictment is duplicitous if it joins two or more distinct crimes in a single count. *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980). A duplicitous indictment, which alleges several offenses in the same count, must be distinguished from "the allegation in a single count of the commission of a crime by several means." *Id*. The latter is not duplicitous. The policy considerations underlying the prohibition against duplicitous indictments are varied. As we previously have stated, these considerations include

avoiding the uncertainty of whether a general
verdict of guilty conceals a finding of guilty as
to one crime and a finding of not guilty as to
another, avoiding the risk that the jurors may
not have been unanimous as to any one of the
crimes charged, assuring the defendant
adequate notice, providing the basis for
appropriate sentencing, and protecting against
double jeopardy in a subsequent prosecution.

*United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981)
(citing *Murray*, 618 F.2d at 896).

A conspiracy indictment presents "unique issues" in the
duplicity analysis because "a single agreement may
encompass multiple illegal objects." *Murray*, 618 F.2d at
896. In this Circuit "it is well established that '[t]he allegation
in a single count of a conspiracy to commit several crimes is
not duplicitous, for "[t]he conspiracy is the crime and that is
one, however diverse its objects."'" *Id.* (citations omitted);
*see also Braverman v. United States*, 317 U.S. 49, 53, 63
S.Ct. 99, 101, 87 L.Ed. 23 (1942) ("Whether the object of a
single agreement is to commit one or many crimes, it is in
either case that agreement which constitutes the conspiracy
which the statute punishes. The one agreement cannot be
taken to be several agreements and hence several
conspiracies because it envisages the violation of several
statutes rather than one.").

We have declined to accept the law of the Fifth Circuit "that
any acts capable of being charged as separate offenses
must be alleged in separate counts." *Margiotta*, 646 F.2d at
733 (citing *Bins v. United States*, 331 F.2d 390, 393 (5th
Cir.), *cert. denied*, 379 U.S. 880, 85 S.Ct. 149, 13 L.Ed.2d
87 (1964)). Instead, under the law of this Circuit, "acts that
could be charged as separate counts of an indictment may
instead be charged in a single count if those acts could be
characterized as part of a single continuing scheme." *United
States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989)
(citation omitted), *cert. denied*, 493 U.S. 1081, 110 S.Ct.
1139, 107 L.Ed.2d (1990).

*United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992). By his motion, the defendant is stating that he would prefer that each check presented be a separate count. Based on the facts presented herein, should the government acquiesce and supersede the Indictment to satisfy the defendant's preference, the Indictment would charge twenty-seven separate counts of bank fraud. Following well-settled Second Circuit precedent, although the acts could have been charged as separate counts, the government instead charged the acts as a single count because those acts could be characterized as part of a single continuing scheme. *See United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992), *quoting United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989). Finally, in its opposition the government conceded that

> there is support for the defendant's view that each individual check cashing is a separate execution of a scheme, and therefore chargeable separately. . . . However, that charging option could be viewed as multiplicitous - charging many offenses when there is only one. The government, while believing there are as a practical matter only two schemes here, and the indictment is more wisely pled as such, would if necessary return to the grand jury to charge the same conduct in more numerous counts, but only if the defendant waived a multiplicity argument.

Dkt. #34, p.11.


In the case at bar, the Court agrees with the government that there were two alleged schemes, one as it relates to Key Bank and the second, as it relates to First Niagara. As to each bank, the defendant allegedly devised a single continuing scheme involving the use of fabricated/counterfeit checks that appeared to be drawn on account holders of each bank, Creditors Financial Group (Key Bank) and PLS III LLC (First

Niagara Bank).  Each of the checks allegedly presented were neither signed by the account holder, nor otherwise authorized by the account holder.  Allegedly, the defendant personally cashed at least seventeen of the counterfeit checks at Key Bank and at least ten of the counterfeit checks at First Niagara, which were made payable to Reginald Hilton and which he endorsed.  Accordingly, for the foregoing reasons, it is recommended that the defendant's motion to dismiss the Indictment as duplicitous be denied.

### Misconduct

Lastly, the defendant asserts that the Indictment should be dismissed because of alleged improper misconduct on the part of Assistant United States Attorney Paul J. Campana, together with defendant's former assigned counsel, Noemi Fernandez-Hiltz, Esq.  Specifically, the defendant asserts that counsel for the government intentionally "invaded" the attorney-client relationship through his acquisition and subsequent use of information divulged by defendant's former assigned counsel in direct contravention of the attorney-client privilege.  Dkt. ##37 and 38. Indeed, the defendant states,

> [t]he government not only acquired and used information obtained with the knowledge that information was privileged, it used said information to gain an understanding of the strengths and weaknesses of it's [sic] prior case against [the defendant], it developed a new case and, presented it's [sic] newly arrived at prosecution to the grand jury by omitting exculpatory facts learned by encouraging further disclosure of privileged information to include, but not limited to [the defendant's] planned defensive strategies.

Dkt. #38, p.1.

In its opposition to the defendant's motion to dismiss based on alleged misconduct, counsel for the government details his numerous communications with defendant's former appointed counsel. As a general matter, however, counsel for the government affirmatively states,

> the undersigned at no time during Ms. Fernandez-Hiltz' representation of defendant Hilton received any information that any breach of the attorney-client privilege occurred. Nor does the government now believe there was a breach of the privilege. At no time did the undersigned or any investigator ask that communications between defense counsel and the defendant be passed along to the government.

Dkt. #39, p.4. A review of the communications between Assistant U.S. Attorney Paul J. Campana and Noemi Fernandez-Hiltz reveals that efforts were being undertaken to resolve the matter prior to the presentation of the matter to a grand jury. In addition, counsel for the government correctly notes that this Court received several *ex parte* communications from the defendant wherein he set forth complaints about the representation he was receiving. In response to these *ex parte* communications, the Court scheduled a status conference to discuss the defendant's complaints.

Defendant's first *ex parte* communication with the Court was dated July 9, 2009 and the Court held a status conference on July 22, 2009 wherein the defendant withdrew his complaints and as described by the government, "[a]fter a colloquy on the record wherein the contents of the letter were not revealed to the government, the defendant withdrew the complaints stated in his letter of July 9, and the Court directed the parties to continue discussions regarding a possible non-trial disposition, which as reported by the parties, had been ongoing." Dkt. #39, p.6. By letter dated August 20,

2009, the defendant once again communicated *ex parte* with the Court setting forth

complaints about the conduct of both his attorney and counsel for the government,

particularly as that conduct related to plea negotiations. The Court again scheduled a

status conference for August 28, 2009. At the time of the August 28, 2009 status

conference, and as part of ongoing plea negotiations, counsel for the government was

aware that it was the defendant's position that "he intended not for the <u>banks</u> to lose

money as a result of his scheme, but for the <u>account holders</u> to take the loss." Dkt.

#39, p.6.

> [f]rom the inception of the case, it had been the
> government's position that the defendant would have
> violated, and did in fact violate, Section 1344 regardless of
> whether the defendant correctly had understood who would
> suffer the loss - be it the banks or the account holders. The
> government's position was that defrauding of the banks
> would have occurred in either event because, by presenting
> counterfeit checks appearing to be drawn on accounts of
> actual account holders, the defendant tricked the bank
> tellers into accepting the checks and giving him (and Mr.
> Brown and others) cash in exchange for worthless paper.

Dkt. #39, p.7. Counsel for the government further states that it is his recollection that

this topic was openly discussed in the defendant's presence during the August 28, 2009

status conference with the Court. The Court has reviewed the electronic recording of

the August 28, 2009 proceedings and in fact, counsel for the government is correct that

there was discussion on the record concerning the ongoing plea negotiations and

requested revisions to the draft plea agreement in an effort to assuage the defendant's

concerns.   Moreover, there was a specific discussion on the record concerning the "intent to defraud" and the intended victim.

Consistent with counsel for the government's understanding that the defendant did not wish to pursue a trial, counsel for both parties continued their efforts to negotiate a plea disposition.  These efforts included the exchange of several drafts of plea agreements in an effort to address the defendant's concerns about making a truthful allocution to a crime.  Notwithstanding the efforts of the parties to reach a non-trial disposition, the matter was presented to a Federal Grand Jury and the above-described Indictment was returned on September 9, 2009.  As set forth in the government's opposition to the instant motion, at the time the matter was presented to a Grand Jury, the government believed that a guilty plea was still possible and that "the principal obstacle to that was agreeing upon language to which the defendant could allocute truthfully."  Dkt. #39, p.11.  Indeed, in its opposition to the instant *pro se* motion, counsel for the government explained that his September 9, 2009 letter to defense counsel again emphasized that,

> 18. . . . the defendant could allocute to the offense without specifying whether it was the banks or the account holders that he intended would bear the loss.  In this letter the government stated that the presentation of counterfeit checks was, in the language of 1344(2) a false *pretense* used to cause the banks to cash checks that they would not have accepted if they had known the checks were counterfeit.  The Court should note that in post-indictment motions filed by the defendant (pro se and not through newly appointed counsel Mr. Paul Dell), the defendant has argued that the government's choice of proceeding under 1344(2) is mistaken.

19. The defendant states throughout his Motion that the government's decision to proceed under Section 1344(2) instead of 1344(a) was caused by communications between the undersigned and defense counsel that were in breach of the attorney-client privilege. This is not true. Although the government learned that the defendant would argue that he did not intend to cause a loss to the banks, this did not affect the government's decision regarding what subsection or paragraph of Section 1344 under which to proceed.

20. In his letter to the Court dated October 1, 2009, which was filed May 7, 2010 (Docket Item at page 2), the defendant indicated that his strategy was to defend against a charge of Section 1344(1), not 1344(2). This indicates that the defendant was counting upon being charged with a 1344(1) "scheme to defraud" offense rather than under the "false pretense" language in 1344(2). As noted above, the defendant's papers suggest that proceeding under Section 1344(2) would also be impermissible, on account of the lack of intent to cause harm to the bank. Dkt. Item 32 at page 8.

Dkt. #39, pp.11-13.


The Court has carefully reviewed all of the defendant's *ex parte* communications withe the Court, as well as all of the documents filed with the Clerk of Court and the proceedings before this Court since the filing of the Criminal Complaint on or about April 23, 2009. As is evident from the record of the proceedings before this Court, this Court has taken the defendant's allegations throughout the pendency of this matter very seriously, particularly the defendant's allegations of the breach of the attorney-client privilege by reason of alleged intentional actions on the part of counsel for the government and the defendant's former counsel. The Court finds these allegations of intentional acts of misconduct on the part of counsel for the government to be without merit. As articulated by the government in its response to the instant

-22-

motion, the government's decision with respect to its theory of prosecution was made wholly independent of any communications with defendant's former counsel and furthermore, was made without regard to what theory the defendant was prepared to defend.  Moreover, the Court notes that the parties were heavily engaged in plea negotiations and during that time, counsel for both parties were endeavoring to arrive at language to which the defendant could allocute truthfully.  During this process, a discussion of specific facts and details of the offense was necessary.  Accordingly, for the foregoing reasons, this Court recommends that defendant's *pro se* motion to dismiss the Indictment for improper conduct be denied.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Decision and Order and Report, Recommendation and Order be filed with the Clerk of Court.

**ANY OBJECTIONS** to this Decision and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Decision and Order  in accordance with the above statute, Fed. R. Crim. P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Judge's refusal to consider the objection.**

DATED:      Buffalo, New York
               July 15, 2010

                                       *s/ H. Kenneth Schroeder, Jr.*
                                       **H. KENNETH SCHROEDER, JR.**
                                       **United States Magistrate Judge**